**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL D. EVANS,

       Petitioner,

v.                                    Case No. 06-CV-13660

LINDA METRISH,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS,**
**AND DENYING A CERTIFICATE OF APPEALABILITY**

**I.  INTRODUCTION**

Petitioner Michael D. Evans, a Michigan prisoner, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted of assault with intent to commit great bodily harm less than murder, Mich. Comp. Laws § 750.84, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a bench trial in the Wayne County Circuit Court in 2001.  He was sentenced to consecutive terms of one and one-half to 10 years imprisonment and two years imprisonment on those convictions.

In his petition, Petitioner raises claims concerning the validity of his sentence, the effectiveness of trial and appellate counsel, and prosecutorial misconduct.  He also raises a claim challenging the sufficiency of the evidence in his reply brief.  For the reasons stated below, the court will deny the petition for a writ of habeas corpus.  The court will also deny a certificate of appealability.

## II. BACKGROUND

Petitioner's convictions arise from the shooting of Charles Lee Coleman on

November 21, 1998 in Detroit, Michigan. The state trial court set forth its factual

findings, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F.

Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), and its legal

conclusions as follows:

> Okay, the Court has had an opportunity to listen to the testimony, and basically the Court concludes that it believes that on November 21st, 1998 at 19782 Woodingham in the City of Detroit. That the testimony revealed that Mr. Evans had his vehicle in the garage of Ms. Leonard. That the, that Ms. Leonard had come over to see the defendant to tell him that she wanted the vehicle moved. According to Ms. Leonard the conversation was rational. There was no arguing. He indicated, the defendant yelled through the house that he was in the bathroom, and that he would be out momentarily. That she was on her way to work, and that it wasn't of significance until the time that the defendant came out of his home. He was talking very loudly to her, at which time she indicated that he called her a bitch. And at that point she got angry, and that he then said get the fuck out of my yard, off of my yard. She indicated she called him a mother fucker and she backed off because it surprised her that she was coming over and that the conversation had turned in this type of light, at which time she indicated that her boyfriend then comes across the street, who we know is Mr. Coleman, who is also the victim in this particular matter. That he basically escorts her back across the street. That he's in the middle of the street and he's exchanging words with Mr. Evans, whose inside of the dwelling. He indicated, Mr. Coleman indicated that he had no intention on going back over to his home. That he was angry that he called his girlfriend a bitch, and that he basically said fuck you, and that the defendant, he heard from the house say fuck you. He then indicated that he heard a shot, and that the bottom of the glass came out of the door, the security door. He indicated he was forty feet away from the defendant's front door, at which time he got back across the street and the defendant had gun to his side and said fuck you, and shot him. He pointed the gun directly at him, and that the gun that was used was a 9 Millimeter.
>
> Now, we had Mr. Evan's testimony basically that Ms. Leonard had come on his porch, was arguing at him and wanting him to move his vehicle. That at some point and time her boyfriend came up also. That he was afraid. That he entered into his house. He shot back through the door, at

2

which time he, the reason he did that is because he indicated he saw Mr. Coleman do a gesture as to go into his jacket as though he was armed with a weapon. And that at some point and time he went and got his gun for protection for himself. However, as the Court had indicated there was no testimony he called the police while he was in the dwelling. That he comes back to the dwelling, comes back out and then he shoots through the bottom of the glass, at which time he indicates that Ms. Leonard shoots across the street and that he believing that Mr. Coleman was armed with a weapon still goes over to where Mr. Coleman was lying on the ground and that he indicated to Ms. Leonard to call the police. He indicated that he went across the street to where Mr. Coleman was. That at one point he said that he had a gun, but it was in his pocket. Well, how would the defendant know it was a 9 Millimeter if he shot through the house and he couldn't see it the first time and broke the glass. And so it was in his pocket but yet he indicated that he did have a 9 Millimeter.

The testimony of the doctor the Court would conclude would have been, the Court is going to give itself an adverse jury instruction. That it was the prosecution's responsibility to produce the doctor, and that the failure to produce the doctor the Court can infer that the witness' testimony would have been unfavorable to the prosecution's case.

Clearly, the issue is one of credibility, and the Court does not believe that the victim, Mr. Coleman, was, in fact, armed with a weapon. Nor does the Court believe that Mr. Evans thought that he was armed with a weapon. The Court does not believe that. The Court believes that they, Mr. Coleman came over in an attempt to bring his girlfriend back over because the defendant was cursing at her, and that they were on their way to work. The Court does not believe also that Ms. Leonard was armed with a weapon.

* * *

So, therefore, the Court does not believe that there is, there was a claim of self-defense. The Court does not believe that defendant had an honest and reasonable belief that he was in danger of being killed or seriously injured. That the Court believes that this was, that this did not happen, and that therefore, the Court - - it says in deciding if defendant's belief was honest and reasonable you should consider all the circumstances as they appeared to the defendant at that time. The testimony is that these people came - - that Ms. Leonard came over in attempt to have him to move his vehicle. That Mr. Coleman was coming over not, didn't - - he came over the first time to get his girlfriend then he didn't come back over again to the house, but that this was, that he was coming over and helping them to reconcile this issue as a peace maker. And so therefore, the Court does not believe that the defendant had an honest and reasonable belief that he was in danger of being killed or seriously injured. The Court believes that

3

the, that the prosecution had proved beyond a reasonable doubt the defendant didn't act in self-defense.

The Court, however, is not going to find the defendant guilty of Assault with Intent to Murder. The Court has to look at - - determine whether or not if there were mitigating circumstances, would, in fact, if the complainant had been killed would it, in fact, been Murder. And the Court - - or Voluntary Manslaughter. The Court believes there was an argument that precipitated this. That the defendant came over. That the defendant shot him in the abdomen and that the defendant was in a position that he could have shot this man in the head. This man was not armed. That he could have shot him multiple times, but that he did shoot him one time in the abdomen. From the location of the wound and the fact that he only shot him one time. The fact that there was an argument that precipitated. The Court is going to find the defendant guilty of the less serious charge of Assault with Intent to Commit Great Bodily Harm Less Than Murder. The Court believes that the People have proved beyond a reasonable doubt that the defendant tried to physically injure another, that is Mr. Charles Coleman. That he did, in fact, shoot him. That at the time of the assault the defendant had the ability to cause an injury. He was armed with this 9 Millimeter weapon. And at the time the defendant fired the shot he intended to cause great bodily harm. That's a specific intent crime, and the Court believes that looking at the circumstances surrounding the shooting, the distance from the shooting. The fact that he was shot in the abdomen. That he intended to commit great bodily harm, in that the defendant had in his possession, to wit a handgun, 9 Millimeter, at the time he committed the crime of Assault With Intent to Commit Great Bodily Harm Less Than Murder. So, that's the Court's finding.

4/2/01 Trial Tr., pp. 141-47.

The trial court subsequently sentenced Petitioner to one and one-half to 10 years imprisonment on the assault conviction and to a consecutive term of two years imprisonment on the felony firearm conviction.

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the following claim:

There was insufficient evidence supporting a verdict of assault with intent to do great bodily harm less than murder and/or the verdict was against the great weight of the evidence.

4

The Michigan Court of Appeals affirmed Petitioner's convictions. *See People v. Evans*,

No. 235909, 2002 WL 31956974 (Mich. Ct. App. Dec. 20, 2002) (unpublished).

Petitioner filed a delayed application for leave to appeal with the Michigan Supreme

Court asserting the following claims:

I.      There was insufficient evidence supporting a verdict of assault with intent to do great bodily harm less than murder and/or the verdict was against the great weight of the evidence.

II.     There was insufficient evidence to establish the element of intent in the instant case and defendant was thereby denied due process of law.

III.    Defendant was denied the effective assistance of trial counsel where trial counsel failed to investigate the scene of the crime to determine that the bullet fired at the victim could not have come from defendant's gun and to obtain pertinent documents, both of which went to the direct issue of actual innocence.

IV.    Defendant was denied due process of law where the prosecuting attorney withheld potentially exculpatory evidence.

V.     Defendant was denied his constitutional rights under Amendment XIV, U.S. Constitution, and Art. I, Sections 17 and 20, Michigan Constitution 1963, where he received ineffective assistance of appellate counsel.

The Michigan Supreme Court denied leave to appeal. *See People v. Evans*, 469 Mich.

874, 668 N.W.2d 149 (2003).

Petitioner subsequently filed a motion for relief from judgment with the trial court

raising the following claims:

I.      Defendant was denied due process of law where the trial court relied upon a constitutionally infirm previous conviction in the presentence report to determine defendant's sentence where defendant was not afforded counsel, a trial, no waiver of trial or counsel, and there had been no plea of guilty or *nolo contendere* to the offense, and appellate counsel was ineffective for failing to raise this issue during defendant's appeal of right.

> II. Defendant was denied effective assistance of counsel where his trial attorney failed to properly prepare for trial by failing to investigate claims of actual innocence and by failing to obtain pertinent documents, and appellate counsel was ineffective for failing to raise this issue during defendant's appeal of right.
>
> III. Prosecutor engaged in prosecutorial misconduct when he failed to provide defendant evidence that could have been exculpatory, trial counsel was ineffective for failing to pursue the evidence, and appellate counsel was ineffective for failing to raise this issue during defendant's appeal of right.

The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3) because Petitioner failed to present good cause for not raising the issues previously. *See People v. Evans*, No. 00-112880-01 (Wayne Co Cir. Ct. Dec. 23, 2004). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals raising the same issues, which was denied pursuant to Michigan Court Rule 6.508(D). *See People v. Evans*, No. 262772 (Mich. Ct. App. Jan. 23, 2006) (unpublished). Petitioner attempted to seek leave to appeal with the Michigan Supreme Court, but his application was rejected as untimely on May 5, 2006. *See* Affidavit of Corbin R. Davis, Michigan Supreme Court Clerk.

Petitioner thereafter filed the present petition for a writ of habeas corpus raising the same claims presented to the state courts in his motion for relief from judgment and related appeals. Respondent has filed an answer to the petition asserting that it should be denied based upon procedural default. Petitioner has filed a reply to that answer contending that his claims should not be barred by procedural default, that his claims are meritorious, and that he is also entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions.

### III.  ANALYSIS

### A.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner

filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521

U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in
>         the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he

'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to

'grant the writ if the state court identifies the correct governing legal principle from [the

Supreme] Court but unreasonably applies that principle to the facts of petitioner's

case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B. Procedural Default of Three Claims**

8

Respondent contends that Petitioner's sentencing, ineffective assistance of counsel, and prosecutorial misconduct claims were not properly exhausted in the state courts and are now barred by procedural default. A prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A Michigan prisoner must raise each issue he seeks to present in a federal habeas proceeding to both the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion requirement. *See Mohn v. Bock*, 208 F.2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

The court agrees that Petitioner has not properly exhausted his sentencing, ineffective assistance of counsel, and prosecutorial misconduct claims in the state courts. Petitioner first raised the ineffective assistance of counsel and prosecutorial misconduct claims before the Michigan Supreme Court on discretionary review during his direct appeal. Submission of claims to a state's highest court on discretionary review does not constitute "fair presentation" when such review is granted only upon "special and important reasons." *Castille v. Peoples*, 489 U.S. 346, 349 (1989). Petitioner then attempted to properly exhaust those claims and to pursue the additional sentencing claim by filing a motion for relief from judgment in the state trial court. Petitioner, however, did not fully exhaust those claims in the state courts because he

failed to file a timely application for leave to appeal with the Michigan Supreme Court.

A state prisoner's habeas claims are procedurally defaulted if the prisoner has failed to comply with an independent and adequate state procedural rule, thus causing default of the prisoner's federal claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This can occur when an individual fails to present an issue to a state appellate court upon the only opportunity to do so. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Rust*, 17 F.3d at 160. In *Coleman*, the United States Supreme Court held that if the decision of the last state court to which a habeas petitioner presented his federal claims fairly appeared to rest primarily on federal law, or to be interwoven with federal law, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition. *Id.* at 735. The Court went on to note:

> This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims [citation omitted].

*Id.* at 735 n.1.

The United States Court of Appeals for the Sixth Circuit employs a four-part test to determine whether a state procedural default bars federal habeas review. The inquiry is whether:

> (1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief.

*Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003) (citing Reynolds v. Berry, 146 F.3d 345, 347 (6th Cir.1998)).

All four parts of the test are met here. Michigan law clearly requires that an application for leave to appeal concerning a criminal conviction in the Michigan Supreme Court be filed within 56 days after the lower court decision. *See* Mich. Ct. R. 7.302(C)(2), (3). Petitioner failed to timely file his application under Michigan Court Rule 7.302(C)(2), and the Michigan Supreme Court rejected it on that basis on May 5, 2006. The procedural rule relied upon by the Michigan Supreme Court to bar review of this issue was firmly established and regularly applied at the time of Petitioner's default. *See* Gen. Ct. R. 1963, 853 (effective Jan. 1, 1965); Mich. Ct. R. 7.302 (effective Mar. 1, 1985). Petitioner thus procedurally defaulted these three habeas claims by failing to timely seek leave to appeal with the Michigan Supreme Court.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). The cause and prejudice test should be applied to all occasions where a procedural default bars state litigation of a constitutional claim. *Coleman*, 501 U.S. at 750.

To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. A petitioner must present a substantial reason to excuse the default. *See*

*Amadeo v. Zant*, 486 U.S. 214, 223 (1988); *Rust*, 17 F.3d at 161. Petitioner asserts

that his procedural default should be excused because he has diabetes and related

ailments. Petitioner, however, has not shown how his health problems prevented him

from timely seeking leave to appeal before the Michigan Supreme Court during the

relevant period. Petitioner also seems to assert that his default should be excused due

to the ineffectiveness of defense counsel. Petitioner, however, has no constitutional

right to counsel during state collateral proceedings. *See Pennsylvania v. Finley*, 481

U.S. 551, 555 (1987). Consequently, any ineffectiveness of counsel cannot constitute

cause to excuse his procedural default in failing to timely seek collateral review in the

Michigan Supreme Court. *See Coleman*, 501 U.S. at 752; *see also* 28 U.S.C. §

2254(I). Petitioner has thus failed to establish cause to excuse his procedural default.

This court need not address the issue of prejudice when a habeas petitioner fails

to establish cause to excuse a procedural default. *See, e.g., Smith v. Murray*, 477 U.S.

527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114

F. Supp. 2d 633, 638 (E.D. Mich. 2000) (Gadola, J.).

Petitioner has also not established that a fundamental miscarriage of justice has

occurred. The miscarriage of justice exception requires a showing that a constitutional

violation probably resulted in the conviction of one who is actually innocent. *See*

*Schlup v. Delo,* 513 U.S. 298, 326-27 (1995); *Murray v. Carrier*, 477 U.S. at 496.

""[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*

*v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual

innocence] requires petitioner to support his allegations of constitutional error with new

reliable evidence -- whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence -- that was not presented at trial."

*Schlup*, 513 U.S. at 324. Petitioner has made no such showing. His assertion that his

habeas claims have merit does not establish a miscarriage of justice. Petitioner's

sentencing, ineffective assistance of counsel, and prosecutorial misconduct claims are

thus barred by procedural default and do not warrant federal habeas relief.

### C. Insufficient Evidence Claim

In his reply brief, Petitioner also asserts that he is entitled to habeas relief

because the prosecution presented insufficient evidence to support his assault

conviction and/or the verdict was against the great weight of the evidence. Petitioner

exhausted this claim on direct appeal in the state courts. Respondent has not

addressed this issue.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme

Court established that a federal court's review of a sufficiency of the evidence claim

must focus on whether "after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Id.* at 319; *see also DeLisle v. Rivers*, 161 F.3d

370, 389 (6th Cir. 1998). The court must view this standard through the framework of

28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The

*Jackson* standard must be applied "with explicit reference to the substantive elements

of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The

mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

To convict a defendant of assault with intent to do great bodily harm less than

murder under Michigan law, the prosecution must establish the following elements: (1)

an attempt or offer with force or violence to do corporal hurt to another, and (2) an

intent to do great bodily harm less than murder. *See* Mich. Comp. Laws § 750.84;

*People v. Mitchell*, 149 Mich. App. 36, 38, 385 N.W.2d 717 (1986). The elements of

felony firearm are: (1) possession of a firearm, (2) during the commission or attempted

commission of a felony. *See* Mich. Comp. Laws § 750.227b; *People v. Akins*, 259

Mich. App. 545, 554, 675 N.W.2d 863, 873 (2003) (citing *People v. Avant*, 235 Mich.

App. 499, 505, 597 N.W.2d 864 (1999)).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on

this claim, stating:

> On appeal, defendant argues that the prosecution failed to present
> sufficient evidence to support his convictions, and also failed to meet its
> burden to disprove self-defense beyond a reasonable doubt. Generally,
> the killing of another person in self-defense by one who is free from fault
> is justifiable homicide if, under all the circumstances, he honestly and
> reasonably believed that he was in imminent danger of death or great
> bodily harm and that it was necessary for him to exercise deadly force.
> *People v. Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002). The necessity
> element of self-defense generally requires the actor to avoid the use of
> deadly force if he can safely and reasonably do so, such as by applying
> non-deadly force or by using an obvious and safe avenue of retreat.
> However, a person is not required to retreat from an attacker who he
> reasonably believes is about to use a deadly weapon. Id. Once evidence
> of self-defense is introduced, the prosecutor bears the burden of
> disproving it beyond a reasonable doubt. *People v. Fortson*, 202 Mich
> App 13, 20; 507 NW2d 763 (1993).
>
> Here, defendant contends that the trial court, sitting as trier of fact,
> improperly based its finding of guilt solely on the testimony of Charles
> Coleman and Lois Leonard, which conflicted with defendant's version of
> events and which was uncorroborated by direct, physical evidence. We
> find the argument to be without merit. First, where contradictory testimony
> is presented, it is the duty of the trier of fact to resolve issues of
> credibility. Here, the trial court found Coleman and Leonard to be
> credible, and defendant not to be credible. *See People v. Elkhoja*, 251

Mich App 417, 442; 651 NW2d 408 (2002). Second, although defendant correctly states the legal rule that a person is under no duty to retreat inside his home and its attached appurtenances, including a porch, if he honestly and reasonably believes that he is in imminent danger of death or great bodily harm, *Riddle, supra*; *People v. Canales*, 243 Mich App 571, 575; 624 NW2d 439 (2000), defendant's testimony that Coleman came toward him on his porch and pulled a gun was not believed by the trial court. Both Coleman and Leonard testified that they were unarmed and that defendant pursued Coleman into the street and shot him at point-blank range. A neighbor testified to seeing Coleman fall to the ground at the end of Leonard's driveway, and defendant immediately speeding away in his car. Thus, sufficient evidence was presented to negate self-defense beyond a reasonable doubt. Third, defendant's challenge to the alleged lack of direct, physical evidence is specious. Such evidence is not necessary to convict of these offenses, and the alleged lack of such evidence in this case does nothing to undermine defendant's convictions.

*People v. Evans*, 2002 WL 31956974 at *1.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The victim, Charles Lee Coleman, testified that he was unarmed when he intervened in an argument between his girlfriend, Lois Leonard, and Petitioner. Coleman escorted Leonard back to her house and Petitioner returned to his house. Coleman shouted an expletive, then heard a gunshot and heard glass break out of the bottom of Petitioner's door. Petitioner then exited his house, approached Coleman while armed with a gun, and shot him in the abdomen. Lois Leonard testified that she and Petitioner exchanged words during an argument and that she then saw Petitioner shoot Coleman and flee the area in a car. Leonard admitted that she owned a gun, but denied firing it that day. The testimony of these two witnesses, if believed, supports the verdict in this case. Although Petitioner claimed that he acted in self-defense, the trial court discredited his testimony and relied upon Coleman's and Leonard's version of events.

Petitioner's insufficient evidence claim essentially challenges the trial court's credibility determinations and the inferences that the court, acting as the fact-finder, drew from the evidence presented at trial.  It is well-settled, however, that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).  It is the job of the trier of fact, not a federal habeas court, to resolve evidentiary conflicts, and this court must presume that the trier of fact resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  Given the evidence presented at trial, the Michigan Court of Appeals' decision was reasonable.  Habeas relief is therefore not warranted on this claim.

Petitioner is also not entitled to habeas relief on a claim that the trial court's verdict was against the great weight of the evidence.  A federal habeas court has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence.  *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985); *Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).  Such a claim is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised.  As discussed, *supra*, such is not the case. Habeas relief is not warranted on this claim.

### D.  Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). In deciding to dismiss the habeas petition, the court has studied the record and relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *Id.* at 901 (quoting *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *rev'd in part on other grounds*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition ... will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

For the reasons stated, the court concludes that jurists of reason would not find the court's ruling that Petitioner's sentencing, ineffective assistance of counsel, and prosecutorial misconduct claims are barred by procedural default debatable.  The court also concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his insufficient evidence/great weight of the evidence claim.

## IV.  CONCLUSION

For the reasons stated above, the court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

Accordingly, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and DISMISSED WITH PREJUDICE.

IT FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 30, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 30, 2008, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522